UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

THE MUSIC FORCE LLC, doing business  :
as THE MUSIC FORCE, also doing       :
business as FULL FORCE MUSIC, and    :      09-CV-00376 (GBD)
HENRY MARX on behalf of themselves   :
and all those similarly situated,    :
                                     :
          Plaintiffs,                :      **ECF CASE**
                                     :
     -*against*-                     :
                                     :
BLACK ENTERTAINMENT                  :
TELEVISION LLC, VIACOM INC.          :
and JOHN DOES 1-10,                  :
                                     :
          Defendants.                :
------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 3

    A.    The Allegations in Plaintiffs' Complaint ................................................. 3

    B.    The Procedural History ............................................................................. 4

    C.    The Settlement Agreement ....................................................................... 5

        1.    The Classes ................................................................................... 5

        2.    The Settlement Consideration ...................................................... 7

        3.    The Release ................................................................................... 7

        4.    The Proposed Plan of Allocation ................................................. 7

    D.    The Proposed Notice Plan ........................................................................ 8

III.  ARGUMENT ........................................................................................................ 8

    A.    Preliminary Approval Should Be Granted Because The Proposed
        Settlement Is Fair, Reasonable, Adequate And Falls Well
        Within "The Range Of Possible Approval" ............................................. 8

        1.    The Legal Standards Governing Preliminary Approval ............. 8

        2.    The Proposed Settlement Was Achieved In Good Faith And Was
            The Result of Arm's-Length Bargaining Between Highly
            Experienced And Capable Counsel ............................................. 9

        3.    The Proposed Settlement Achieves A Good Result
            For The Classes .......................................................................... 11

    B.    The Classes Should Be Certified For Settlement Purposes Because
        They Satisfy The Four Requirements of Rule 23(a) and The Two
        Prongs of Rule 23(b)(3) .......................................................................... 12

        1.    The Classes Satisfy The Four Requirements of Rule 23(a) ...... 12

i

a.     Rule 23(a)(1)—The Members of The Classes Are So Numerous That Joinder Of All Members Is Impracticable ............................ 13

b.     Rule 23(a)(2)—There Are Numerous Questions of Law and Fact Common To The Classes ................................................ 13

c.     Rule 23(a)(3)—The Claims and Defenses of The Class Representatives Are Typical of The Claims and Defenses of The Classes ............................................................................. 14

d.     Rule 23(a)(4)—The Class Representatives and Plaintiffs' Counsel Will Fairly And Adequately Protect The Interests of The Classes ......................................................... 14

2.     The Classes Satisfy The Two Prongs of Rule 23(b)(3) ............................ 15

a.     Common Questions of Law and Fact Predominate ...................... 15

b.     A Class Action Is The Superior Method To Adjudicate These Claims .......................................................................... 16

C.     The Notice Plan Should Be Approved Because It Provides "The Best Notice Practicable Under The Circumstances" .................................................................... 17

1.     The Legal Standards Governing Notice.................................................... 17

2.     The Proposed Notice Includes All the Requirements of Rule 23(c)(2)(B) and Comports With Due Process ................................... 18

3.     The Proposed Notice Plan Is Calculated To Provide Individual Notice To All Members Of The Classes Who Can Be Identified Through Reasonable Effort...................................................................... 18

4.     The Proposed Notice Plan Also Provides For The Publication of Notice of The Settlement In Four Separate Music Industry Publications And An Internet Website Designed For This Settlement ......................................................................................... 19

D.     The Court Should Appoint Lovell Stewart Halebian Jacobson LLP, The Law Offices of Jeffrey L. Graubart, P.C. and The Law Offices of Joshua Graubart, P.C. As Class Counsel Because They Easily Satisfy The Requirements of Rule 23(g)(1) and Rule 23(g)(4) ................................................ 20

1.     Rule 23(g)(1): Plaintiffs' Counsel Are More Than "Adequate" Under The Four Factors A Court "Must Consider" Under Rule 23(g)(1)............................................................................................ 21

a.     Rule 23(g)(1)(A)(i)—Plaintiffs' Counsel Have Done Significant Work In This Action .................................................... 21

b.     Rule 23(g)(1)(A)(ii)—Plaintiffs' Counsel Have Significant Experience With Handling Complex Class Action Litigation And Copyright Infringement Claims .......................... 21

c.     Rule 23(g)(1)(A)(iii)—Plaintiffs' Counsel Have Shown That They Posses Significant Knowledge of The Applicable Law ............................................................................................ 22

d.     Rule 23(g)(1)(A)(iv)—Plaintiffs' Counsel Have Committed Substantial Resources To Representing The Classes ................... 22

2.     Rule 23(g)(4):  Plaintiffs' Counsel Have Demonstrated That They Have And Will Continue To "Fairly And Adequately Represent The Interests Of The Class" ...................................................................................... 22

CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52 (2d Cir. 2000) ........................ 13

*Bano v. Union Carbide Corp*, 273 F.3d 120 (2d Cir. 2001) ........................................................ 7

*Chatelain v. Prudential-Bache Securities, Inc.*, 805 F. Supp. 209 (S.D.N.Y. 1992)..................... 9

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974)................................................... 10

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ............................. 12

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .............................................................. 8

*In re Global Crossing Securities and ERISA Litig.*, 255 F.R.D. 436 (S.D.N.Y. 2004)............... 11

*In re Initial Public Offering Securities Litig.*, 260 F.R.D. 81 (S.D.N.Y. 2009) .............. 12, 13, 14

*In re Napster, Inc. Copyright Litigation*, 2005 WL 1287611 (N.D. Cal. June 1, 2005).............. 15

*In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ............................ 8

*Ory, et al., v. Columbia House Music Club, et al.*,
    No. 02-02342 (C.D. Cal. August 20, 2003) ........................................................................... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005) ............................ 8, 16, 17


**Rules**

Fed. R. Civ. P. 23(a) .................................................................................................................. 11

Fed. R. Civ. P. 23(b)(3)............................................................................................................... 14

Fed. R. Civ. P. 23(b)(3)(A)-(D) ................................................................................................. 15

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................... 16, 17

Fed. R. Civ. P. 23(e) ............................................................................................................... 7, 11

Fed. R. Civ. P. 23(e)(1).............................................................................................................. 16

Fed. R. Civ. P. 23(g)(1)..................................................................................................... 19

Fed. R. Civ. P. 23(g)(1)(A).............................................................................................. 19

Fed. R. Civ. P. 23(g)(4)..................................................................................................... 21

**Other Authorities**

*Manual for Complex Litigation* (Fourth) §21.63 (2004) ............................................... 8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, plaintiffs The Music Force LLC, doing business as The Music Force, also doing business as Full Force Music, and Henry Marx (collectively "Plaintiffs') by and through their undersigned counsel, respectfully submit this memorandum in support of their motion for preliminary approval of the Stipulation and Agreement of Settlement ("Settlement" or "Settlement Agreement") executed by Plaintiffs and defendants Black Entertainment Television LLC ("BET") and Viacom Inc. (collectively "Defendants").  A copy of the Settlement Agreement and its exhibits are attached hereto as Exhibit 1 to the Declaration of Christopher M. McGrath ("M.Decl.").

## I.    INTRODUCTION

Plaintiffs in this class action seek damages and injunctive relief on behalf of themselves and the Classes (defined in II.C.1 *infra*) who own and/or control rights to certain musical compositions and/or sound recordings that were allegedly embodied without their authorization in programming produced, distributed, and/or aired on networks owned and controlled by Defendants in violation of the United States Copyright Act, 17, U.S.C. §101 *et seq*. ("Copyright Act"), New York common law and New York unfair competition law.  See II.A. *infra*.

Plaintiffs entered into the Settlement with Defendants on January 26, 2011.  See II.B. *infra*.  Under the Settlement, Defendants have agreed to make a cash payment of $2,750,000 for the benefit of the Classes in exchange for dismissal and release of Plaintiffs' and the Classes' claims against Defendants.  See II.C.2. *infra*.

The Settlement has several hallmarks of a fair, reasonable and adequate settlement of complex class action litigation.  First, the settlement negotiations continued at arms'-length between highly experienced counsel for almost two years and included review of thousands of pages of documents, data and other materials that underlie this litigation.  See III.A.1 *infra*.

Second, the Settlement was reached only after the parties prepared and submitted mediation briefs, engaged in a mediation session and participated in several follow-up telephone conferences before The Honorable Daniel Weinstein (Ret).  See III.A.2 *infra*.

Accordingly, Plaintiffs, on behalf of themselves and the proposed Classes, now respectfully move the Court to grant preliminary approval of the Settlement and enter the [Proposed] Order Preliminarily Approving Settlement, Provisionally Certifying Classes And Providing For Notice To Classes (see M.Decl. Ex. 1-A) that, among other things:

1. finds the Settlement to be sufficiently fair, reasonable, and adequate to warrant dissemination of notice to the Classes (M.Decl. Ex. 1-A ¶4);

2. certifies the proposed Classes for settlement purposes (*id*. ¶1);

3. appoints Lovell Stewart Halebian Jacobson LLP, The Law Offices of Jeffrey L. Graubart, P.C., and The Law Offices of Joshua Graubart, P.C. (collectively "Plaintiffs' Counsel") as class counsel for the Classes (*id*. ¶2);

4. appoints Plaintiffs as class representatives of the Classes (*id*. ¶3);

5. finds the notice plan to be the best practicable notice under the circumstances (*id*. ¶6);

6. approves the forms of mailed and published notice of the Settlement (*id*. ¶6);

7. approves The Garden City Group[1] as the Settlement Administrator and escrow agent (*id*. ¶9);

8. sets a schedule leading to the Court's consideration of final approval of the Settlement, including:

   a. the date, time, and place for a hearing to consider the fairness, reasonableness and adequacy of the Settlement ("Fairness Hearing") (*id*. ¶5);

   b. the deadline for members of the Classes to exclude themselves (*i.e.,* opt out) from the Settlement (*id*. ¶¶10-11);

---

[1] The Garden City Group is well-recognized and has administered thousands of class action settlements (including settlements involving copyright infringement claims) for more than twenty-five years.  See http://www.gcginc.com/pages/about-us/our-story.php.

2

c.  the deadline for Plaintiffs' Counsel to submit a petition for attorneys' fees, reimbursement of expenses, and incentive awards for Plaintiffs (*id*. ¶15);

d.  the deadline for members of the Classes to object to the Settlement and any of the related petitions (*id*. ¶¶12-14); and

9.  preliminarily enjoins Plaintiffs and members of the Classes from commencing or prosecuting any action against Defendants relating to this action pending final approval of the Settlement. *Id*. ¶17.

At the Fairness Hearing, Plaintiffs will request the entry of a final order and judgment (substantially in the form of M.Decl. Ex. 1-D) dismissing the action and retaining jurisdiction for the implementation and enforcement of the Settlement.

## II.   BACKGROUND

### A.   The Allegations in Plaintiffs' Complaint

Plaintiffs and members of the Classes are persons and entities that own and/or control exclusive rights to musical works in the form of (1) copyrighted sound recordings and/or copyrighted musical compositions protected under the Copyright Act and/or (2) pre-February 15, 1972 sound recordings protected under New York common law and unfair competition law.  See First Amended Class Action Complaint at Docket No. 5 ("Complaint"; see M.Decl. Ex. 6) at ¶¶2, 11-12.  Plaintiffs' source of revenue is derived largely from the sale, distribution and licensing of their sound recordings and musical compositions. *Id*. ¶2.

Defendant BET is an American cable network and a wholly-owned subsidiary of defendant Viacom Inc. *Id*. ¶¶3, 13-14.  BET exhibits music videos, television series, commercials, movies and other programming. *Id*. ¶3.  Plaintiffs allege that BET's exhibitions during the Class Period (*i.e.*, January 14, 2003 to the present) included programming that embodied musical compositions and sound recordings owned and/or controlled by Plaintiffs and members of the Classes. *Id*. ¶¶4, 11-12.

Section 106 of the U.S. Copyright Act grants certain exclusive rights to the owners of copyrighted works. *Id*. at ¶2. One such exclusive right is the right to authorize the reproduction of copyrighted works, including the reproduction of such works in connection with visual images. *Id*; see also 17 U.S.C. §106(1). Accordingly, authorization from the owner of an exclusive right is required in order to lawfully reproduce a copyrighted work in connection with a visual image (*e.g.*, a television program). Complaint ¶4. In the music industry, such authorization is commonly referred to as a synchronization (or "sync") license when the authorization is in connection with the use of a musical composition, and a "master use" license when the authorization is in connection with a sound recording. *Id*.

Plaintiffs allege that Defendants failed to obtain from Plaintiffs and members of the Classes authorizations, in the form of synchronization and master use licenses, for the reproduction of certain of their copyrighted works that were embodied in programming exhibited on BET's networks. See *e.g.*, Complaint ¶5. Accordingly, Plaintiffs allege that Defendants infringed Plaintiffs' exclusive rights under the Copyright Act and New York law entitling Plaintiffs to injunctive relief and damages. *Id*. ¶6. BET denies the allegations in Plaintiffs' Complaint and has asserted numerous affirmative defenses.

**B.  The Procedural History**

Plaintiffs filed their initial complaint in this action on January 14, 2009 and filed their first amended class action complaint on February 5, 2009. Docket Nos. 1, 5. On March 27, 2009, Defendants answered the Complaint and asserted thirty-one affirmative defenses. See Docket Nos. 15-16. The parties filed a joint Rule 26(f) discovery plan on April 21, 2009. Docket No. 25.

4

Within a few months of the filing of Plaintiffs' initial complaint, the parties began discussing settlement.   During these settlement discussions Defendants produced (and Plaintiffs reviewed) samples of Defendants' programming and thousands of pages of documents and data reflecting Defendants' use and licensing of sound recordings and musical compositions.  After reaching a standstill after almost a year of negotiations, the parties agreed to mediation before Judge Weinstein (Ret.) in or around April 2010.  See Docket No. 35.  Thereafter, the parties submitted mediation briefs and participated in a mediation session on July 8, 2010 in Santa Monica, California.  See Docket No. 36.  Following several months of continued negotiations after the mediation, including several follow-up conference calls with Judge Weinstein (Ret.), the parties informed the Court on November 16, 2010 that they had reached agreement on the material terms of the settlement.  Docket No. 38.  By January 26, 2011, Plaintiffs and Defendants had executed the Settlement Agreement.  See M.Decl. Ex. 1.

### C.    The Settlement Agreement

The Settlement Agreement and its exhibits include the following material terms.

### 1.    The Classes

The Settlement Agreement defines the Classes as follows:

The Musical Composition Class:

> All Persons[2] who are current Legal Owners[3] of a musical composition
> or portion thereof that, without license or authorization, was copied,

---

[2] "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, retirement plan, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity and their spouses, heirs, predecessors, successors, representatives or assignees.

[3] "Legal Owner," as used herein in reference to a musical composition or sound recording means (a) the legal owner of a copyright in the musical composition or sound recording, or portion thereof; (b) any exclusive licensee(s) of any right pursuant to such copyright to (and/or to authorize others to) copy, reproduce, synchronize, display, perform, broadcast, telecast, cablecast, syndicate, exhibit, transmit, disseminate, distribute or otherwise use the musical

> reproduced, synchronized, displayed, performed, broadcast, telecast, cablecast, syndicated, exhibited, transmitted, disseminated, distributed or otherwise used in connection with or as part of any television series, episode, program, music video, performance, advertisement, promotion, commercial, or other exploitation in any manner in any medium anywhere between January 14, 2003, and the date of entry of the Notice Order whether now known or hereafter devised by or under the authority of BET LLC.[4]

M.Decl. Ex. 1 at ¶1.1(a).

> The Sound Recording Class:

> All Persons who are current Legal Owners of a sound recording or portion thereof that, without license or authorization, was copied, reproduced, synchronized, displayed, performed, broadcast, telecast, cablecast, syndicated, exhibited, transmitted, disseminated, distributed or otherwise used in connection with or as part of any television series, episode, program, music video, performance, advertisement, promotion, commercial, or other exploitation in any manner in any medium anywhere between January 14, 2003, and the date of entry of the Notice Order whether now known or hereafter devised by or under the authority of BET LLC.[5]

*Id*. at ¶1.1(b).

---

composition or sound recording, or portion thereof, as part of a television series, episode, program, music video, performance, advertisement, promotion, commercial, or other exploitation in any manner in any medium anywhere whether now known or hereafter devised, provided that such exclusive licensee was granted the power to sue for the infringement of its rights under the license; or (c) any other holder of a past or present cause of action that may exist for the infringement of the copyright, or the rights therein, described in (a) and (b) above.

[4] The Musical Composition Class shall also include any Persons who currently hold any monetary or royalty interest that derives from an Excluded Person's (see fn. 5 below) interest as Legal Owner of a musical composition, or portion thereof, referenced in subparagraph (a) above.

[5] Excluded from the Musical Composition and Sound Recording Classes are solely (i) any Persons to the extent their claims as alleged in the Action have already been released and discharged; (ii) any Persons to the extent they submit a timely and valid request to be excluded from the Classes ("Request for Exclusion"); (iii) Defendants, any affiliated or related company or entity, and any entity in which a Defendant or any affiliated or related entity has a controlling interest; and (iv) each of the major record companies (Sony BMG Music Entertainment; Universal Music Group; EMI Music; Warner Music Group) and major music publishers (Sony/ATV Music Publishing; BMG Music Publishing; Universal Music Publishing; EMI Music Publishing; Warner/Chappell Music, Inc.) (collectively, "Excluded Persons").

### 2.      The Settlement Consideration

Pursuant to the terms of the Settlement Agreement, Defendants have agreed to make a

cash payment of $2,750,000 for the benefit of the Classes.  M.Decl. Ex. 1 ¶4.1.  Defendants have

further agreed that Plaintiffs and members of the Classes shall enjoy most favored nation status

with respect to the consideration provided under the Settlement Agreement and in the manner

and subject to the limitations provided therein.  *Id*. ¶4.9.

### 3.      The Release

In exchange for the foregoing consideration provided by Defendants, Plaintiffs and the

Classes have agreed to release and discharge Defendants and associated persons from any and all

claims that have been or could have been asserted by Plaintiffs, for themselves or on behalf of

the Classes, with respect to the use of musical compositions and sound recordings in connection

with any television series, episode, program, music video, performance, advertisement,

promotion, commercial, or other exploitation in any manner in any medium anywhere and at any

time from January 14, 2003, through the later of the date of entry of the final judgment or the

thirtieth (30th) day after the deadline for submitting a completed "Proof of Claim Form,"

whether now known or hereafter devised by or under the authority of Defendants.  See M.Decl.

Ex. 1 at ¶6.

### 4.      The Proposed Plan of Allocation

The proposed plan of allocation is designed as follows.  First, the settlement funds (net

Court approved fees and expenses) shall be allocated pro rata to the Musical Composition Class

and the Sound Recording Class based on the total allowed claims for each class.  M.Decl. Ex. 1

at ¶¶4.4-4.7.  For example, if the total allowed claims in the Musical Composition Class

represent 500 musical compositions and the total allowed claims in the Sound Recording Class

represent 200 sound recordings, the settlement funds shall be allocated 5/7 to the Musical

Composition Class and 2/7 to the Sound Recording Class.  *Id*.  Second, after the settlement funds

have been allocated between the two Classes, members of the Classes shall share in their

respective settlement fund(s) based on their pro rata share of claims.  *Id*.  For example, if a

member of the Musical Composition Class has an allowed claim representing 50 musical

compositions and the total allowed claims represent 500 musical compositions, then such

member shall be entitled to 50/500 (or 10%) of the settlement funds attributable to the Musical

Composition Class.

> **D.      The Proposed Notice Plan**

The proposed notice plan includes mailing notice (substantially in the form of M.Decl.

Ex. 1-B) of the Settlement by United States first class mail, postage prepaid, to members of the

Classes whose addresses can be obtained through reasonable efforts.  M.Decl. Ex. 1-A ¶6(a); see

III.C.3 below (detailing efforts to identify and notify members of the Classes).

The proposed notice plan also includes publishing notice (substantially in the form of

M.Decl. Ex. 1-C) of the Settlement in four separate music industry publications (*i.e.*, *Billboard*,

*Variety*, *Daily Variety*, and *Music Week*) and on an internet website designed by the Settlement

Administrator.  *Id*. ¶6(b).

## III.   ARGUMENT

> **A.      Preliminary Approval Should Be Granted Because The Proposed Settlement
> Is Fair, Reasonable, Adequate And Falls Well Within "The Range Of
> Possible Approval"**

>> **1.      The Legal Standards Governing Preliminary Approval**

The settlement of a class action requires court approval.  *Compare* Fed. R. Civ. P. 23(e)

(settlements in class actions require "…the court's approval") *with Bano v. Union Carbide Corp*,

273 F.3d 120, 129-30 (2d Cir. 2001) (there is an overriding public interest in settling and quieting litigation, particularly class actions).

"Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled." *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ*"); see also *Manual for Complex Litigation* (Fourth) §21.63 (2004). When a court considers preliminary approval of a class action settlement, it must "…make a preliminary evaluation of the fairness of the settlement…" prior to ordering notice of the settlement be sent to the class. *NASDAQ*, 176 F.R.D. at 102. A court should grant preliminary approval where:

> …the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.

*Id.* In conducting the foregoing inquiry, courts generally consider two types of evidence: (1) the negotiating process leading up to the settlement and (2) the settlement's substantive terms. *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001). After preliminary approval has been granted notice is sent to members of the class, including notice of a "fairness hearing" where class members and the parties to the settlement may be heard before the court grants final approval of the settlement. *NASDAQ*, 176 F.R.D. at 102.

### 2. The Proposed Settlement Was Achieved In Good Faith And Was The Result of Arm's-Length Bargaining Between Highly Experienced And Capable Counsel

A class action settlement is entitled to a presumption of fairness, adequacy and reasonableness when "…there were arm's-length negotiations between experienced counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) *cert. denied*, 544 U.S. 1044 (2005) ("*Wal-Mart*").

The Settlement negotiations here were in good faith, strictly at arm's length and free of collusion.  M.Decl. ¶2.  There is no doubt that the parties are represented by highly experienced and capable counsel with prior experience in copyright class actions.[6]  Moreover, the proposed Settlement was ultimately the result of a mediation process before Judge Weinstein (Ret.) that included the submission of mediation briefs, a day-long mediation session and follow-up telephone conferences.  In sum, the Settlement was the product of hard-fought negotiations over a period of almost two years that involved several in-person meetings, numerous telephone conferences and considerable e-mail and other correspondence between counsel.

Plaintiffs' Counsel undertook a diligent and thorough investigation of the factual and legal issues posed by this litigation—including, for example, reviewing and analyzing the Defendants' 5,500-plus page document production, reviewing a sample of Defendants' programming and consulting with an industry expert.

In light of their prior experience in complex class actions and copyright litigation, their knowledge of the strengths and weaknesses of Plaintiffs' claims and their assessment of the Classes' likely recovery following trial and appeal, Plaintiffs' Counsel concluded that the Settlement is fair, reasonable, adequate and in the best interests of Plaintiffs and the Classes.  See *Chatelain v. Prudential-Bache Securities, Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) ("[a] substantial factor in determining the fairness of the settlement is the opinion of counsel involved in the settlement.").

---

[6] Plaintiffs' Counsel's experience and achievements are reflected in their firm resumes.  See M.Decl. Exs. 2-4.

Defendants are represented by Richard Kendall and the law firm Kendall Brill and Klieger LLP.  See Docket No. 28.  Mr. Kendall has substantial experience both defending and prosecuting copyright infringement claims.  See http://www.kbkfirm.com/attorneys/richard-kendall

### 3.      The Proposed Settlement Achieves A Good Result For The Classes

In evaluating a proposed settlement's substantive terms at the preliminary approval stage, courts often consider the following "*Grinnell* factors" even though some of these factors were clearly designed with final approval in mind:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

Continuing this litigation against Defendants would entail a lengthy and highly expensive legal battle involving complex legal and factual issues.  Both sides would likely need to employ and utilize expert witnesses.  Due to the volume of infringements potentially at issue in this case, litigating through trial would require expensive and time-consuming discovery and most likely would involve discovery disputes that would require Court intervention.  Defendants have asserted various defenses, including thirty-one separate affirmative defenses, and a jury trial might well turn on close questions of proof making the outcome of such trial uncertain for both parties.  Plaintiffs also bear the additional risk of class certification and withstanding interlocutory appeal under Rule 23(f).

Furthermore, the Settlement is based on, *inter alia*, the following extensive discovery. Defendants provided Plaintiffs with cue sheets, correspondence and contracts relating to a sampling of Defendants' uses of certain musical works.  Defendants also provided Plaintiffs with twenty-two DVDs containing full-length episodes of certain of BET's television programming. Plaintiffs and Defendants both devoted substantial time reviewing, analyzing and discussing the

foregoing discovery and such discovery formed a basis on which this case was settled. Separately, the Plaintiffs engaged in their own independent factual investigations that included witness interviews.

In sum, the proposed Settlement is procedurally and substantively fair, reasonable, adequate and justifies sending notice of the Settlement to the members of the Classes.

**B.** **The Classes Should Be Certified For Settlement Purposes Because They Satisfy The Four Requirements of Rule 23(a) and The Two Prongs of Rule 23(b)(3)**

Rule 23(e) allows only for the settlement "of a certified class."  *Compare* Fed. R. Civ. P. 23(e) *with In re Global Crossing Securities and ERISA Litig.,* 255 F.R.D. 436, 451 (S.D.N.Y. 2004) ("[t]he Second Circuit has acknowledged the propriety of certifying a class solely for settlement purposes…").  A court may grant certification for settlement purposes where the proposed settlement class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).  *Id.* As demonstrated below, the Classes meet all the requirements of Rule 23(a) as well as the two prongs of Rule 23(b)(3).

**1.** **The Classes Satisfy The Four Requirements of Rule 23(a)**

Rule 23(a) permits an action to be maintained as a class action if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

      **a.**    <u>**Rule 23(a)(1)**</u>**—The Members of The Classes Are So Numerous That Joinder Of All Members Is Impracticable**

Rule 23(a)(1)'s numerosity requirement does not mean that joinder must be impossible, but rather "…merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Public Offering Securities Litig.*, 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("*IPO*"). In fact, numeroisty can be presumed at a level of forty class members or more. *Id.* citing to *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995).

Here, the proposed Classes consist of persons and entities throughout the United States whose sound recordings and/or musical compositions were allegedly exhibited by BET without authorization between January 14, 2003 and the present. See II.C.1 *supra.* Based on documents produced in the action, the number of television episodes potentially implicated by Plaintiffs' claims could reach into the hundreds and the Classes likely include at least hundreds of persons and entities. Clearly, joinder of the numerous and geographically dispersed members of the Classes is both impracticable and—in light of the proposed Settlement—unnecessary. Thus, Rule 23(a)(1) is satisfied.

      **b.**    <u>**Rule 23(a)(2)**</u>**—There Are Numerous Questions of Law and Fact Common To The Classes**

Rule 23(a)(2) commonality requires that common issues of fact or law affect all class members. *IPO*, 260 F.R.D. at 91. Here, there are numerous legal and factual issues common to members of the Classes. These common issues include, among others:

    1) whether Defendants' conduct violates the Copyright Act;

    2) whether Defendants' conduct violates New York common law and unfair competition law;

13

3)   the operative time period of Defendants' alleged violations of the Copyright Act
and New York common law and unfair competition law; and

4)   the appropriate measure of the amount of damages suffered by the Classes.

Complaint ¶18.

Plaintiffs' overarching allegation is that Defendants engaged in a uniform infringing

business practice in that they allegedly failed to obtain from Plaintiffs and members of the

Classes authorizations for the reproduction of certain of their copyrighted works.  Plaintiffs

contend that Defendants' foregoing practice affected all members of the Classes in the same

manner such that the proof required to establish Defendants' alleged unlawful conduct is

common to all members of the Classes.   Defendants deny these contentions but agree, for

settlement purposes only, that Plaintiffs' allegations describe some legal and factual issues

common to the proposed Classes.  Thus, Rule 23(a)(2) is satisfied.

> **c.**     **Rule 23(a)(3)—The Claims and Defenses of The Class
> Representatives Are Typical of The Claims and Defenses of
> The Classes**

Typicality may be satisfied under Rule 23(a)(3) where "injuries derive from a unitary

course of conduct by a single system." *IPO*, 260 F.R.D. at 91.  The injuries of the proposed class

representative Plaintiffs are typical of the injuries of the members of the Classes because they

arise from the same alleged unitary course of Defendants' conduct.  Plaintiffs also seek the same

relief as the Classes they seek to represent.  Complaint ¶¶1, 11-12, 16.  Defendants deny these

contentions but agree, for settlement purposes only, that Plaintiffs allege that their injuries are

typical of the injuries of the members of the Classes because they allegedly arise from the same

alleged unitary course of Defendants' conduct.  Thus, Rule 23(a)(3) is satisfied.

> **d.**     **Rule 23(a)(4)—The Class Representatives and Plaintiffs'
> Counsel Will Fairly And Adequately Protect The Interests of
> The Classes**

14

Rule 23(a)(4) adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Generally, courts will consider "whether (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id.* at 61.

First, Plaintiffs alleged that they had their music exhibited by Defendants during the Class Period without authorization and were thereby all impacted by Defendants' conduct. See Complaint ¶¶11-12. These are the same claims Plaintiffs allege on behalf of all members of the Classes. *Id.* at ¶1, 16. Thus, the proposed class representative Plaintiffs' interests in proving liability and damages are entirely aligned with that of members of the Classes. Second, Plaintiffs are represented by experienced counsel thoroughly familiar with complex class action and copyright litigation. See III.D. *infra* and M.Decl. Exs. 2-4. Thus, Rule 23(a)(4) is satisfied.

### 2.      The Classes Satisfy The Two Prongs of Rule 23(b)(3)

In addition to establishing that the proposed class satisfies Rule 23(a)'s requirements, plaintiffs must also show that one of three alternative categories under Rule 23(b) has been established. *IPO*, 260 F.R.D. at 92. Plaintiffs move pursuant to Rule 23(b)(3) and therefore must establish (1) "…that the questions of law or fact common to class members predominate over any questions affecting only individual members…" and (2) "…that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.      Common Questions of Law and Fact Predominate

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *IPO*, 260 F.R.D. at 92. Here, Plaintiffs allege that

Defendants have engaged in a uniform infringing business practice (*i.e.*, reproducing copyrighted musical compositions and sound recordings without first obtaining authorization) that affected all members of the Classes.  *Compare* Complaint ¶¶4-5 *with Ory, et al., v. Columbia House Music Club, et al.*, No. 02-02342 (C.D. Cal. August 20, 2003) (Otero, J.) ("*Ory*"), M.Dec. Ex. 6 at p. 6 ("[t]he most important factual allegation supporting the motion to certify the classes is that Defendants employ a uniform business practice, effecting all members of the class equally, whereby Defendants distribute copyrighted compositions without first obtaining a license") [emphasis supplied]; see also *In re Napster, Inc. Copyright Litigation*, 2005 WL 1287611 at *7 (N.D. Cal. June 1, 2005) ("*Napster*") (certifying Rule 23(b)(3) copyright class action and finding that "...the claims of every member of the class are uniformly premised upon the uploading or downloading of a copyrighted work by Napster users.").  Defendants deny these contentions but agree, for settlement purposes only, that Plaintiffs allege that Defendants have engaged in a uniform infringing business practice that allegedly affected all members of the Classes.  Thus, issues common to the members of the Classes predominate over any individual questions.

**b.      A Class Action Is The Superior Method To Adjudicate These Claims**

Rule 23(b)(3)'s "superiority" requirement requires a plaintiff to show that a class action is superior to other methods available for "fairly and efficiently adjudicating the controversy." See Fed. R. Civ. P. 23(b)(3)(A)-(D) (listing four non-exhaustive factors to consider).

Many of the individual claims of members of the Classes are likely modest such that the expense and burden of individual litigation make it virtually impossible for them to protect their rights.  See *Napster*, 2005 WL 1287611 at *10-12 (finding that Rule 23(b)(3) superiority was satisfied where class members included "...small composers who individually lack the time, recourses, and legal sophistication to protect their copyrights").  Moreover, the prosecution of

separate actions by potentially hundreds of individual members of the Classes would impose

heavy burdens upon the Court and would create a risk of inconsistent or varying adjudications of

the questions of law and fact common to the Classes.  For these and other reasons, a class action

is superior to other available methods for fairly and efficiently adjudicating this controversy.

Defendants deny these contentions but agree, for settlement purposes only, that a settlement on a

class basis is superior to other forms of settlement in this action.  Thus, both prongs of Rule

23(b)(3) are satisfied.

     **C.**    **The Notice Plan Should Be Approved Because It Provides "The Best Notice Practicable Under The Circumstances"**

         **1.**    **The Legal Standards Governing Notice**

After a class action settlement has been preliminarily approved, "[t]he court must direct

notice in a reasonable manner to all class members who would be bound by the proposal."  Fed.

R. Civ. P. 23(e)(1).  When a class is certified for settlement purposes under Rule 23(b)(3) "…the

court must direct to class members the best notice that is practicable under the circumstances,

including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B).

In particular, the notice must:

…clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c).

Fed. R. Civ. P. 23(c)(2)(B).

Notice regarding a proposed settlement is adequate under **both** Rule 23 and the

Due Process Clause if it "fairly apprise[s] the prospective members of the class of the

17

terms of the proposed settlement and of the options that are open to them in connection

with the proceedings" and it can "be understood by the average class member."  *Wal-*

*Mart*, 396 F.3d at 114-15.

**2.  The Proposed Notice Includes All the Requirements of Rule 23(c)(2)(B) and Comports With Due Process**

The Proposed Notice includes, *inter alia*, each of the requirements of Rule 23(c)(2)(B):

(i) a description of the action (M.Decl. Ex. 1-B pp. 2-4); (ii) a definition of the Classes (*id*. p. 4);

(iii) a description of the class claims, issues and defenses (*id*. p. 8); (iv) a statement that a class

member may enter an appearance through an attorney if the member so desires (*id*. p. 8); (v) a

statement that the Court will exclude from the class any member who requests exclusion (*id*. pp.

2, 8); (vi) the time and manner for requesting exclusion (*id*.); and (vii) a statement concerning the

binding effect of a class judgment on class members (*id*. pp. 2, 5).  *Compare* M.Decl. Ex. 1-B

*with* Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice also comports with due process.  The proposed notice is well

organized, written in plain concise language such that it could easily be understood by the

average class member and it fairly apprises the Classes of the existence of the Settlement, their

options under the Settlement Agreement, the material terms of the Settlement and how they may

obtain a copy of same.  *Compare* Proposed Notice *with Wal-Mart*, 396 F.3d at 114-115.

**3.  The Proposed Notice Plan Is Calculated To Provide Individual Notice To Members Of The Classes Who Can Be Identified Through Reasonable Effort**

The proposed notice plan includes providing individual notice by U.S. mail to members

of the Classes who can be identified through the following efforts.  First, following entry of the

Court's order requiring that notice be provided to the Class, BET will compile a list of all

reasonably ascertainable putative Class Members by researching BET's records of programs that

18

were exhibited during the Class Period.  Such records will include, for example, cue sheets.  Cue sheets typically identify each piece of music used in a film or television production and typically include the identity of the composer and/or publisher.  Second, BET will provide to the Settlement Administrator a database[7] of the titles of the potentially unlicensed musical compositions and sound recordings that were used on such programs, together with the Legal Owner (if reasonably ascertainable) of each such music composition or sound recording.[8]

Third, based on the information provided to the Settlement Administrator by BET, the Settlement Administrator will mail the Notice to Class Members as follows.  In the case of Class Members who are represented by a legal representative, the Settlement Administrator will mail to each such legal representative a copy of the Notice together with the names of all of the reasonably ascertainable Legal Owners that are believed to be associated with such representative, and a list identifying each such Legal Owners' musical composition(s) and/or sound recording(s).  In the case of Class Members who are not represented by a known legal representative, the Settlement Administrator will mail the Notice directly to the Class Member, if the Settlement Administrator is able to determine an address for such Class Member.

>    **4.**      **The Proposed Notice Plan Also Provides For The Publication of Notice of The Settlement In Four Separate Music Industry Publications And An Internet Website Designed For This Settlement**

---

[7] The Settlement Administrator will use this database to create a search function on the settlement website that will enable persons who believe that they may be Class Members to search the database for the names of sound recordings or musical compositions that they believe may have been used in such television programs.

[8] Some owners of musical compositions are represented by a legal representative (often, a music publisher) who is authorized to grant licenses and releases, and to collect license fees on behalf of the putative Class Member.  Some owners of sound recordings may have similar arrangements with a legal representative.  In compiling and providing to the Settlement Administrator a list of putative Class Members,  BET will identify, where applicable, any known legal representatives of the putative Class Members.

Plaintiffs' notice plan also includes publishing notice in the following four separate music industry publications: *Billboard*, *Variety*, *Daily Variety*, and *Music Week*.  M.Decl. Ex. 1-A¶6(b).  The foregoing trade publications are among the leading publications in the music industry and have a combined circulation of over 75,000.  Any members of the Classes that do not receive notice through direct mail are likely to receive notice through the foregoing publications or through word of mouth.

The Settlement Administrator will also design and operate an internet website where Class members can access the Settlement Agreement and a copy of the preliminary approval order, obtain answers to anticipated questions about class action settlements (including how to make a claim and how to be excluded from the Settlement) and find other information regarding the settlement process.  *Id.* ¶6(c).  The website address will be included in both the direct mail notice and the published notice.  *Id.*

In sum, the proposed notice plan meets each of the requirements under Rule 23(c)(2)(B), comports with due process and is the best notice practicable under the circumstances.

**D.      The Court Should Appoint Lovell Stewart Halebian Jacobson LLP, The Law Offices of Jeffrey L. Graubart, P.C. and The Law Offices of Joshua Graubart, P.C. As Class Counsel Because They Easily Satisfy The Requirements of Rule 23(g)(1) and Rule 23(g)(4)**

Federal Rule of Civil Procedure 23(g)(1) provides that "…a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  Rule 23(g)(2) provides that where, as here, only one application is made seeking appointment as class counsel, "…the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)."  Fed. R. Civ. P. 23(g)(2).  As set forth below and as reflected in Plaintiffs' Counsels' resumes (see M.Decl. Exs. 2-4), Plaintiffs' Counsel are clearly "adequate" under each of the factors set forth in 23(g)(1) and (4).

20

1.      <u>Rule 23(g)(1)</u>:  **Plaintiffs' Counsel Are More Than "Adequate" Under The Four Factors A Court "Must Consider" Under Rule 23(g)(1)**

Rule 23(g)(1)(A) recites four factors that a court "must consider" when appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class

Fed. R. Civ. P. 23(g)(1)(A).

a.      <u>Rule 23(g)(1)(A)(i)</u>—**Plaintiffs' Counsel Have Done Significant Work In This Action**

Since investigating the claims and filing their initial complaint in January 2009, Plaintiffs' Counsel have completed considerable work in this case.  Such work includes, *e.g.*, reviewing several dozen samples of Defendants' programming, reviewing and analyzing Defendants' 5,500-plus page document production, preparing a mediation brief, mediation presentation and participating in a mediation session and consulting with an industry expert.

b.      <u>Rule 23(g)(1)(A)(ii)</u>—**Plaintiffs' Counsel Have Significant Experience With Handling Complex Class Action Litigation And Copyright Infringement Claims**

The undersigned believe that the result obtained for the class is the best indicator of "counsel's experience in handling class actions."  Lovell Stewart has achieved class action settlements that recovered, after deduction for all costs and attorneys' fees, 100 cents on the dollar of losses of each claiming class member in five separate actions.  M.Dec. Ex. 2 pp. 1-2.

With respect to "counsel's experience in….the types of claims asserted in the action…," Jeffrey Graubart has obtained significant settlements in four prior copyright class actions where he acted as class counsel.  M.Decl. Ex. 3 p. 2.  Mr. Graubart has also successfully prosecuted

numerous other copyright infringement cases.  *Id*.  Joshua Graubart holds an advanced degree in

intellectual property, has considerable experience in commercial litigation and the evaluation of

intellectual property and has previously obtained a favorable settlement in a copyright class

action.  M.Decl. Ex. 4.  Plaintiffs' Counsel have approximately fifty years of combined

professional experience with copyright infringement claims.  See M.Decl. Exs. 2-4.

> **c.**      **Rule 23(g)(1)(A)(iii)—Plaintiffs' Counsel Have Shown That They Posses Significant Knowledge of The Applicable Law**

In the judgment of the undersigned, their "knowledge of the applicable law" (here,

copyright law) is best reflected by their extensive experience and success in prosecuting

copyright infringement claims reflected above.

> **d.**      **Rule 23(g)(1)(A)(iv)—Plaintiffs' Counsel Have Committed Substantial Resources To Representing The Classes**

Plaintiffs' Counsel have committed considerable resources to representing the Classes in

this action.  For one example, Plaintiffs' Counsel expended in excess of one hundred attorney

hours in order to review and analyze Defendants' 5,500-plus page document production and

sample television programming.  For another example, Plaintiffs' Counsel retained an industry

expert in order to help evaluate the strengths and weaknesses of Plaintiffs' and the Class

members' claims.

> **2.**      **Rule 23(g)(4):  Plaintiffs' Counsel Have Demonstrated That They Have And Will Continue To "Fairly And Adequately Represent The Interests Of The Class"**

Rule 23(g)(4) provides that "[c]lass counsel must fairly and adequately represent the

interests of the class."  Fed. R. Civ. P. 23(g)(4).  Plaintiffs' Counsel respectfully submit that the

Settlement, obtained after almost two years of hard-fought negotiations, demonstrates that

Plaintiffs' Counsel have fairly and adequately represented the interests of the Classes.

Accordingly, the Court should appoint Lovell Stewart Halebian Jacobson LLP, The Law Offices of Jeffrey L. Graubart, P.C. and The Law Offices of Joshua Graubart, P.C. as class counsel.

## CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the Settlement and enter the [Proposed] Preliminary Approval Order.

Dated: New York, New York
      January 26, 2011

Respectfully submitted,

*/s/ Christopher Lovell*
Christopher Lovell (CL-2595)
Christopher M. McGrath (CM-4983)
**LOVELL STEWART HALEBIAN JACOBSON LLP**
61 Broadway, Suite 501
New York, New York 10006
Telephone:    (212) 608-1900
Facsimile:    (212) 719-4775

*/s/ Jeffrey L. Graubart*
Jeffrey L. Graubart (JG-1338)
**LAW OFFICES OF JEFFREY L. GRAUBART, P.C.**
350 West Colorado Boulevard, Suite 200
Pasadena, California 91105-1855
Telephone:    (626) 304-2800
Facsimile:    (626) 304-2807

*/s/ Joshua Graubart*
Joshua Graubart (JG-6791)
**LAW OFFICES OF JOSHUA GRAUBART, P.C.**
237 E. 28th Street, Suite 1D
New York, New York 10016
Telephone:    (646) 781-9321
Facsimile:    (646) 224-8088

***Counsel for Plaintiffs & the Proposed Classes***

23